UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**SHANTAE WADE**                                                                                          **PLAINTIFF**

**V.**                              **NO. 5:19CV00086-JTR**

**ANDREW SAUL,**
**Commissioner of Social Security Administration**[1]                 **DEFENDANT**

## ORDER

**I.   Introduction:**

Plaintiff, Shantae Wade ("Wade"), applied for disability benefits on July 1, 2016, alleging disability beginning on February 18, 2016. (Tr. at 16). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 27). The Appeals Council denied her request for review, making the ALJ's denial of her application for benefits the final decision of the Commissioner. (Tr. at 1).

For the reasons stated below, the Court [2] affirms the decision of the Commissioner.

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

**II.    The Commissioner's Decision:**

The ALJ found that Wade had not engaged in substantial gainful activity since the alleged onset date of February 18, 2016. (Tr. at 18). At Step Two, the ALJ found that Wade had the following severe impairments: bipolar disorder, borderline personality disorder, and depression. (Tr. at 19).

After finding that Wade's impairments did not meet or equal a listed impairment (Tr. at 19), the ALJ determined that Wade had the residual functional capacity ("RFC") to perform work at all exertional levels, except that: (1) she is limited to unskilled, rote activities; (2) she can understand, remember, and follow concrete instructions; (3) she can have superficial contact with supervisors and coworkers; (4) she can have very limited contact with the public, and (5) she can meet, greet, and give simple instructions and directions, but she would be unable to work as a cashier. (Tr. at 21).

The ALJ found that Wade had no past relevant work. (Tr. at 25). Relying upon the testimony of a Vocational Expert ("VE"), the ALJ found that, based on Wade's age, education, work experience and RFC, jobs existed in significant numbers in the national economy which she could perform, including work as crate icer and machine packager. (Tr. at 26). Thus, the ALJ concluded that Wade was not disabled. *Id*.

## III. **Discussion:**

    A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d. at 477.

    B.   Wade's Arguments on Appeal

Wade contends that substantial evidence does not support the ALJ's decision

3

to deny benefits. She argues that: (1) the ALJ failed to give appropriate weight to the medical opinions; (2) the ALJ did not account for limitations in concentration, persistence, and pace at Step Five; and (3) the ALJ did not properly evaluate the severity of Wade's diabetes and obesity at Step Two.

Wade was diagnosed with borderline personality disorder, PTSD, and major depression. In September 2014 she was hospitalized for seven days for suicidal ideation. (Tr. at 326-328). She recovered and was discharged. *Id.* This was over a year before the relevant time-period (which is February 18, 2016 through July 24, 2018). (Tr. at 26-27).

While Wade alleged that she suffered from anxiety, depression, anger, and irritability, the record shows that she was non-compliant with treatment, missing appointments for therapy and stopping medication for long periods of time. (Tr. at 335-343, 586). During 2016 and 2017, she saw various therapists and psychiatrists at Delta Counseling Associates ("DCA"). In June 2016, Wade reported that she was feeling grounded and thinking before she acted. (Tr. at 337). In August 2016, her therapist listed her strengths as responsible mother, intelligent, having good insight, and having a good sense of humor.[3] (Tr. at 344-248).

---

[3] Wade had five young children and took care of them diligently by preparing meals, getting them ready for bed, and shopping for groceries. (Tr. at 47, 54, 231-233, 266-268). She described herself as a "homemaker," and in a patient questionnaire, she listed problems with

4

Mary Odom, LCSW, of DCA, noted in November 2016 that Wade had a good mood and congruent affect, with appropriate and rational thought-process. (Tr. at 491-493). Odom wrote that Wade was distracted by her phone and it took effort to engage her. *Id*. Wade said that she had been doing well and her anger and depression had decreased. *Id*. She credited Benzitropine with helping control her anger and improve her mood. (Tr. at 335-343). For the balance of her appointments with providers at DCA, her mental status examinations were mostly normal. (Tr. at 321-325, 243-348, 364-369, 491).

On April 7, 2017, Odom completed a medical source statement. Wade argues the ALJ should have given it more weight. In the statement, Odom found that Wade had moderate to extreme limitations in mental functional areas required for work tasks. (Tr. at 508-509). She said that, based on a diagnosis of borderline personality disorder and major depression, Wade would have limitations in occupational, social, financial, and familial functioning. *Id*. However, these findings are *inconsistent with* Odom's own clinic notes from before and after the date of her statement, which

---

excessive cleaning and double-checking things to make sure she did not make a mistake. (Tr. at 593-597). This runs counter to her argument that she had problem with concentration, persistence, or pace. In addition, Wade said she could drive a car and walk for miles at a time. (Tr. at 47, 54, 231-233, 266-268). Her ability to perform all of these activities of daily living undermines Wade's allegations of disabling conditions. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995).

showed improvement in Wade's condition and reflect that Wade's mood was normal and cooperative. (Tr. at 491, 572-600). *See Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)(the ALJ may discount a treating physician's opinion where he renders inconsistent opinions that undermine his credibility). Odom's statement was also *inconsistent with* the notes of other providers at DCA, including W.R. Ogelsby, M.D., and Charles Lewis, M.D., who signed clinic notes authored by therapists. (Tr. at 583-584, 634). Wade only saw Dr. Lewis for medication management and did not exhibit marked problems that could not be controlled by treatment. The ALJ properly considered the DCA opinions, in properly exercising his discretion and judgment, concluded that Odom's statement was entitled to little weight. (Tr. at 24-25).

The ALJ also considered the opinion of consultative examiner Samuel B. Hester, Ph.D., who evaluated Wade in October 2016. (Tr. at 364-369). Dr. Hester did find some deficiencies in communication and ability to get along with others, which the ALJ fully accounted for in the RFC.[4] *Id*. The ALJ pointed out the inconsistency in Dr. Hester's opinion, which stated that Wade had a limited ability to sustain concentration but no limitation in the ability to sustain persistence. *Id*; (Tr. at 24). For this reason, the ALJ gave Dr. Hester's opinion partial weight. *Id*.

---

[4] Dr. Hester recommended that Wade receive regular therapy.

The ALJ gave considerable weight to the opinions of the two Disability Determination Services reviewing mental health clinicians, who found no more than moderate limitations in the basic work function areas such as maintaining social functioning and maintaining concentration, persistence, and pace. (Tr. at 23-24). The ALJ wrote that these opinions reflected "improvement with compliant medication use and progression in achieving mental therapy goals with regular attendance."[5] *Id*.

Wade also argues that the ALJ's hypothetical question to the VE did not account for limitations in her concentration, persistence, and pace. However, because the record does not show more than moderate limitations in these areas,[6] the ALJ's hypothetical properly accounted for Wade's limitation in these areas.

In *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996), the Eighth Circuit reversed the denial of benefits where the record showed numerous examples of significant deficiencies in concentration, persistence, and pace, but the ALJ only asked the VE about "simple jobs." The Court found this boilerplate phrase failed to account for the claimant's real mental function deficiencies borne out by the record. *Id*. Here, unlike *Newton*, the record supports both the ALJ's determination of Wade's

---

[5] Wade "no-showed" several therapy appointments. (Tr. at 343, 586).

[6] Wade could perform a variety of daily activities requiring significant concentration, persistence, and pace. Additionally, the record shows few deficits in cognition and good memory. (Tr. at 327-328); *see Brachtel v. Apfel*, 132 F.3d. at 417, 421 (8th Cir. 1997).

7

RFC and the hypothetical question the ALJ posed to the VE.[7] *See Williams v. SSA*, No. 2:18-CV-00174-BD (E.D. Ark. Feb. 25, 2020)(distinguishing *Newton* where record demonstrated claimant could perform a variety of activities requiring concentration, persistence and pace, and a more detailed and restrictive hypothetical sufficed); *see Gray v. Colvin*, No. 4:14-CV-00815 (E.D. Mo. Sept. 28, 2015)(distinguishing *Newton* and holding RFC that limited the claimant to unskilled work appropriately accounted for limitation in concentration, persistence, and pace based on the ALJ's review of medical record, evaluation of subjective complaints, and great weight given to state agency consultants and little weight given to treating physicians' opinions); *see Fleming v. Colvin*, No. 4:15-CV-1150-SPM, (E.D. Mo. Aug. 26, 2016)(holding in part that an RFC limiting the claimant to occasional interaction with supervisors, coworkers, and the public appropriately limited exposure to potential distraction and was sufficient to account for limitations in concentration, persistence, and pace). In the case at bar, both the RFC and the hypothetical posed to the VE withstand judicial scrutiny.

Finally, Wade argues that diabetes and obesity should have been considered severe impairments at Step Two. The ALJ did question Wade about these conditions

---

[7] Wade made a cursory argument that the RFC did not incorporate her mental limitations but the RFC for unskilled work with limited interactions with others fully accounted for Wade's alleged anger and irritability, both of which improved with treatment.

and discussed them in his opinion. (Tr. at 19, 49-55). Wade refused to check her blood glucose levels at home, refused to attend classes for diabetes management, and declined to follow her doctors' consistent recommendations to exercise and lose weight. Refusal to follow a prescribed course of treatment undercuts a claimant's allegations of disability. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997). Clinic notes show that Wade's diabetes was "uncontrolled" when she was noncompliant. (Tr. at 550-567). Moreover, diabetes and obesity did not cause any treating physician to place any restrictions on Wade, and she continued to carry on caring for her children and attending to daily tasks (including walking for miles at a time). Finally, Wade failed to allege problems with diabetes or obesity in her application paperwork. (Tr. at 221, 251-265). *See Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011)(in affirming ALJ's finding of no mental impairment, the court noted that claimant did not allege mental impairment on the application for benefits).

### IV. **Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly evaluated the medical opinions, he accounted for limitations in concentration, persistence, and pace in the hypothetical, and he did not err at Step Two.

IT IS THEREFORE ORDERED that the final decision of the Commissioner

is AFFIRMED, and Wade's Complaint is DISMISSED, with prejudice.

DATED this 26th day of June, 2020.

_____
UNITED STATES MAGISTRATE JUDGE